IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KIMBERLEE R. SECORD,

        Plaintiff,

vs.                            Case No. 12-1016-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On August 9, 2010, administrative law judge (ALJ) George M. Bock issued his decision (R. at 12-20). Plaintiff alleges that she has been disabled since August 1, 2007 (R. at 12). Plaintiff is insured for disability insurance benefits through

September 30, 2012 (R. at 14).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 14).  At step two, the ALJ found that plaintiff had the following severe impairments: depression and feet numbness (R. at 14).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15).  After determining plaintiff's RFC (R. at 16), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 18).  At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 18-19).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19-20).

**III.  Did the ALJ err in his evaluation of the opinions of Dr. Swanson?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v.

Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Dr. Swanson, plaintiff's treating physician, filled out a medical source statement on December 30, 2009 which limited plaintiff to standing/walking for less than 2 hours in an 8-hour workday, and sitting for less than 4 hours in an 8-hour workday; Dr. Swanson also included various postural and manipulative limitations (R. at 308-309). The vocational expert (VE)

7

testified that a person with the limitations set out in Dr. Swanson's statement would not be able to work (R. at 41).

The ALJ stated the following regarding the opinions of Dr. Swanson:

> However, the undersigned gives little weight to the opinions of the claimant's treating physician, Dr. Swanson, because it appears to be based solely on the claimant's subjective complaints, since all objective test results were essentially negative. Moreover, Dr. Swanson's opinions were inconsistent with his own treatment notes that indicate the claimant's condition was and could be controlled with medication and her "bruising on the hands" was an unusual complaint.

(R. at 18).

The ALJ discounted the opinions of Dr. Swanson because they appeared to be based solely on plaintiff's subjective complaints, since all objective test results were essentially negative. The court will first address the question of essentially negative test results. Dr. Swanson's treatment records from July 15, 2008 include the following:

> The patient has what continues to be neuropathic pain, though without an EMG supporting the diagnosis of peripheral neuropathy. This is not uncommon.

(R. at 229). An earlier treatment note, dated September 14, 2007, stated the following:

> At the present time her EMG/nerve conduction study was normal with no suggestion of a clearly defined peripheral neuropathic

8

> change, radicular change or plexopathy in
> the right lower extremity. Certainly some
> aspects of nervous system change could be
> missed by this test especially those that
> involve strictly the central nervous system.
> Clinical correlation is encouraged though at
> the present time her peripheral nervous
> system seems to be functioning adequately
> well though sometimes small sensory
> neuropathies may be present and cannot be
> detected by this test.

(R. at 248). Although the test results were negative, Dr. Swanson indicates that this is not uncommon, and that some aspects of nervous system change could be missed by the test.

An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion. McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers. Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004). An ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002). There is no medical opinion evidence disputing or contradicting Dr. Swanson's analysis of these test results; thus, there is no valid basis for the ALJ to assert that the

negative test results indicate that the opinions of Dr. Swanson were based solely on plaintiff's subjective complaints.

In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

As Langley makes clear, the ALJ must have either a legal or evidentiary basis for asserting that a medical source report was based only or primarily on plaintiff's subjective complaints. However, the ALJ did not have either a legal or evidentiary basis for his assertion that his opinions were based solely on plaintiff's subjective complaints.

10

Although the medical statement prepared by Dr. Swanson indicated that it mentioned a face-to-face interview, presumably with the plaintiff, the statement further indicated that the opinions expressed were "based upon objective findings and your professional judgment" (R. at 308). For the reasons set forth above, the court therefore finds that the ALJ clearly erred by concluding that the opinions of Dr. Swanson appeared to be based solely on plaintiff's subjective complaints.

The ALJ also discounted the opinions of Dr. Swanson because his opinions were inconsistent with the treatment notes indicating that plaintiff's condition was and "could be controlled with medication" (R. at 18). However, what Dr. Swanson indicated in his treatment notes of July 15, 2008 was that the medication "was certainly quite helpful before at reducing some of her neuropathic pain" (R. at 229), and that medication "may improve this pain over time" (R. at 230). There is nothing in these statements which are clearly inconsistent with the opinions of Dr. Swanson. The ALJ failed to cite to any evidence indicating that Dr. Swanson indicated plaintiff's condition "could be controlled with medication."

**IV. Did the ALJ err in his evaluation of the medical source evidence pertaining to plaintiff's mental impairments and limitations?**

On December 29, 2008, Dr. Wilkinson performed a psychological evaluation on the plaintiff. She concluded as follows:

> <u>Ability to work</u>
> Based on the Ms. Secord's performance during this evaluation, as well as clinical observations, she demonstrates a marginal capacity to work. Her cognitive capacity to understand and remember simple instructions is within normal limits. Her ability to sustain concentration, persistence and pace in a work setting is vulnerable to her depression and fatigue. Her ability to maintain appropriate social interactions with coworkers, supervisors and clientele is within normal limits.

(R. at 279). On January 26, 2009, Dr. Fantz prepared a mental RFC assessment. He found that plaintiff was moderately limited in the following categories:

> The ability to understand and remember detailed instructions.
>
> The ability to carry out detailed instructions.
>
> The ability to maintain attention and concentration for extended periods.

(R. at 294-295). The ALJ stated that he gave "great weight" to the opinions of the consultative psychologist and the state agency assessments (R. at 18). The only mental limitation that the ALJ included in his RFC findings for the plaintiff was: "the claimant is limited to unskilled work that involves 1 to 3 step instructions" (R. at 16).

According to SSR 96-8p:

> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

In the case before the court, the ALJ, despite giving great weight to the consultative psychologist and the state agency assessments, clearly failed to include all of the moderate limitations set forth in the assessment by Dr. Fantz. Although the ALJ limited plaintiff to work that involves 1 to 3 step instructions, the ALJ did not include the opinion of Dr. Fantz that plaintiff had a moderate limitation in the ability to maintain attention and concentration for extended periods.

In the case of <u>Newton v. Chater</u>, 92 F.3d 688, 695 (8th Cir. 1996), two medical sources found that the claimant had a moderate limitation in his ability to maintain attention and concentration for extended periods. However, the ALJ failed to include this and other limitations in concentration and persistence in the hypothetical question to the vocational expert (VE). Because these limitations were not included in the hypothetical question, the court held that the VE's testimony

could not constitute substantial evidence to support the Commissioner's decision, even though the hypothetical question limited the claimant's capabilities to "simple jobs." Furthermore, in this case, the VE testified that a moderate deficiency in concentration and persistence would cause problems on an ongoing daily basis, regardless of what the job required from a physical or skill standpoint. The court remanded the case for further hearing, and directed that the hypothetical question on remand should include claimant's deficiencies of concentration, persistence, or pace so that the vocational expert might accurately determine his ability to work.

The ALJ failed to include in his RFC findings all of the limitations set out in the assessment by Dr. Fantz, and failed to explain why all of the limitations were not included in the RFC findings. This violates the requirement in SSR 96-8p that if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. Therefore, in accordance with the holding in Newton, on remand, the ALJ should either include a limitation in plaintiff's ability to maintain attention and concentration for extended periods, or provide a legally sufficient explanation for not including this limitation in plaintiff's RFC.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four

of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 6th day of March, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge